# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

CHARLENE AND JOISHA SIMPSON,  )
                                 )

       **Plaintiffs,**            )
                                 )

**v.**                          ) Case No. 2:15-cv-777-WKW-PWG
                               )

PRIMERICA LIFE INSURANCE, CO.  )
*et al.*,                            )
                               )

       **Defendants.**       )

## REPORT AND RECOMMENDATION

On September 18, 2015, Charlene Hayes Simpson and Joisha Artor Simpson filed a civil complaint in the Circuit Court of Montgomery County, Alabama. (Doc. 2-1). The state court complaint, sounding exclusively in state law, alleges claims under the following counts: (1) negligence, (2) wantonness, (3) negligent and wanton hiring, training or supervision (4) invasion of privacy and violation of "the identity theft laws of Alabama, Code of Alabama, Article 10, The Consumer Identity Protection Act, §§ 13A-8-199, [] 13A-8-200-201, (5) intentional infliction of emotional distress, (6) outrage,[1] (7) conversion, and (8) "fraud misrepresentation" against Premerica Life

---

[1] As a matter of Alabama law, the torts of "outrage" and "intentional infliction of emotional distress" are not separate causes of action but, rather, are the same claim. *Cont'l Cas. Ins. Co. v. McDonald*, 567 So. 2d 1208, 1210-11 (Ala. 1990) ("The tort of outrage, or intentional infliction of

Insurance, Co., Robert Nelson, and various unnamed fictitious defendants. (Doc. 2-1). On October 22, 2015, Defendants removed the dispute to the United States District Court for the Middle District of Alabama, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.

On October 26, 2015, within the 30 day requirement of 28 U.S.C. § 1447(c), Plaintiffs filed an "objection" to the notice of removal and "[m]otion to transfer this matter back to the ... Circuit Court of Montgomery, Alabama," which is construed as a motion to remand. (Doc. 1). In the motion, Plaintiffs argue that neither complete diversity of the parties nor the minimum amount in controversy are present.

On October 29, 2015, Defendants were ordered to show cause by November 12, 2015 why this action should not be remanded to state court for lack of subject matter jurisdiction at the time of removal. (Doc. 6). On November 4, 2015, Defendants filed a motion seeking jurisdictional discovery on the issue of the amount in controversy and for a "60 day deferral" before being required to file a response to the show cause order. (Doc. 7). That motion is denied in a separate order. On November 12, 2015, Defendants tendered a brief and evidentiary submission in response to the show cause order and reiterated their request for jurisdictional

─────────────────

severe emotional distress, was first recognized by this Court in *American Road Service Co. v. Inmon*, 394 So.2d 361 (Ala. 1980).").

discovery.  (Doc. 8).

The matter is before the undersigned pursuant to the order of reference dated October 28, 2015. (Doc. 5).  *See also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jefferey S. v. State Bd. of Educ. of State of Ga.,* 896 F.2d 507 (11th Cir. 1990).  The motion to remand is taken under submission on the record and without oral argument.  For the reasons discussed below, the motion to remand is due to be granted and this cause remanded to the Circuit Court of Montgomery County, Alabama.  Defendants have not demonstrated complete diversity of citizenship of the parties nor have they met their burden to show the minimum amount in controversy.

# I.   PLAINTIFFS' COMPLAINT AND DEFENDANTS' NOTICE OF REMOVAL

Plaintiffs' allegations of fact against all Defendants are set out in four separate paragraphs and on a single page of the state court complaint. (Doc. 2-1 at p. 3, ¶¶ 5-8).  They are brief.

Plaintiffs allege that they and all named Defendants are citizens of the State of Alabama. As a basis for their claims, Plaintiffs assert that Defendants, without permission, withdrew $110.00 from Plaintiffs' bank account to pay for an insurance policy Plaintiffs did not purchase.  That unauthorized withdrawal by Defendants

caused Plaintiffs' bank account to be overdrawn such that Plaintiffs were unable to make a scheduled payment on their auto loan, and the lender repossessed Plaintiffs' car.  According to the complaint, when Plaintiffs contacted Defendant Nelson to inform him of the unauthorized debit from their account, Mr. Nelson "explained ... that their Social Security Number[s] [were] their signature and []authorized him to take the policy out and debit their accounts." (Doc. 2-1 at p. 3).  Defendants replaced the money debited for the insurance policy, but the car has not been returned.

On those alleged facts, Plaintiffs demand compensatory and punitive damages as well as attorney's fees and costs.  Plaintiffs also allege that they are entitled to compensation for "pain," "suffering," "personal injury," "mental anguish," "loss of enjoyment of life," and "great mental and emotional distress and emotional damage" based on the negligent and willful actions of Defendants, without any additional specificity.  Plaintiffs further aver that they "have been made ill as a result of this mental and emotional distress[,]" but they do not provide any illumination or details on their illnesses.  (Doc. 2-1 at p. 6).

In the notice of removal, Defendants assert that the parties are completely diverse in their citizenship as required by § 1332.  They further allege that the minimum amount in controversy requirement is evident (1) on the face of the complaint despite the fact that Plaintiffs do not make a specific damages demand, (2) because of a

settlement offer by Plaintiffs' counsel to resolve this dispute for $250,000.00, (3) other cases decided in Alabama courts resulted in jury awards in excess of the amount in controversy, and (4) the value of Plaintiffs' 2008 Honda Accord,[2] which Defendants provide evidence is worth between $9,622 - $12,359.[3]

## II.   DISCUSSION

Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  A federal district court is "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress."  *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).  Therefore, a federal court is obligated to inquire into subject matter jurisdiction "at the earliest possible stage in the proceedings."  *Id.* at 410.  "It is to be presumed that a

---

[2] The evidence of record is that the car repossessed from Plaintiffs was a 2008 Honda Accord. Plaintiffs have not challenged Defendants' evidence on this point, and the court assumes that fact to be true for purposes of this Report and Recommendation.

[3] The value of the 2008 Honda Accord is considered to be $12,359 in resolving Plaintiffs' motion to remand, and it is assumed without deciding that the value of the car is relevant to the amount in controversy in this dispute.  In other words, Defendants are presumed to have demonstrated that the amount in controversy is likely at least $12,359 based on the assumed value of the repossessed Honda.

5

cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.

When, as here, the purported statutory basis for federal jurisdiction is § 1332(a)(1)—a civil action satisfying the amount-in-controversy requirement and between "citizens of different States"—there must be "complete diversity of citizenship. That is, diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Also, "[d]iversity jurisdiction exists where ... the amount in controversy exceeds the statutorily prescribed amount, in this case, $75,000." *Griffith v. Wal-Mart Stores East, L.P*, 884 F. Supp. 2d 1218, 1222 (N.D. Ala. 2012) (citing *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001)). Removal jurisdiction requires both complete diversity and satisfaction of the requisite amount in controversy. A case does not become removable until both conditions are present.

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). A removing defendant must establish the propriety of removal under 28 U.S.C.

6

§§ 1441, 1446 and, therefore, must demonstrate the existence of federal jurisdiction. *See*, *e.g.*, *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("the burden of establishing removal jurisdiction rests with the defendant seeking removal"); *City of Vestavia Hills v. Gen. Fidelity Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction."). The procedural propriety of removal is often intertwined with the substantive question of the existence of subject matter jurisdiction. Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all jurisdictional doubts being resolved in favor of remand to state court. *Burns*, 31 F.3d at 1095.

When a case is removed—that is, which provision of 28 U.S.C. § 1446(b) ((b)(1) or (b)(3)) a removing defendant invokes—also governs the burden of proof as to amount in controversy. *See*, *e.g.*, *Jones v. Novartis Pharms. Co.*, 952 F. Supp. 2d 1277, 1281–82 (N.D. Ala. 2013) ("The removal procedure statute contemplates two ways that a case may be removed based on diversity jurisdiction. The first way (formerly referred to as 'first paragraph removals')[, and accomplished pursuant to 28 U.S.C. § 1446(b)(1),] involves civil cases where the jurisdictional grounds for removal are apparent on the face of the initial pleadings. The second way (formerly referred to as 'second paragraph removals') contemplates removal where the

7

jurisdictional grounds later become apparent through the defendant's receipt of 'an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.'"   (quoting 28 U.S.C. § 1446(b)(3) (footnote omitted)).[4]

In the notice of removal, Defendants contended that the lawsuit at issue is removable generally pursuant to § 1446(b), but do not specify whether this is a (b)(1) or a (b)(3) removal.  That distinction is normally apparent upon the facts pled in a notice of removal, which should clearly designate whether the removing party construed the initial pleading as being removable on its face, and therefore a (b)(1) removal, or if there is (b)(3) "other paper" received from Plaintiffs that caused the jurisdictional amount to become apparent.  Because the notice of removal was filed within thirty days from the date Defendants were served with a copy of the original state court complaint, and Defendants assert that pleading alone demonstrates diversity jurisdiction,[5] this case is a first paragraph, or a § 1446(b)(1), removal.  If a defendant

---

[4] As noted in *Jones,* the distinction between "first paragraph" and "second paragraph" removals is rendered obsolete by a clearer version of the removal statute, as amended by the *Federal Courts Jurisdiction and Venue Clarification Act of 2011*, PL 112–63, December 7, 2011, 125 Stat. 758, which added subsections to 28 U.S.C. § 1446(b).  The substance of the removal procedure is not affected by the stylistic changes to the statute; therefore, the previous case law discussing "first paragraph" and "second paragraph" removals is still applicable despite its outdated terminology.

[5] This argument is curious given that the complaint is silent on the damages being sought and contains unambiguous allegations that the parties are all citizens of Alabama, and Defendants have not provided any evidence to the contrary.

removes to federal court pursuant to § 1446(b)(1), then that party must demonstrate federal jurisdiction by a "preponderance of the evidence," whether or not that evidence is received from the plaintiff. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 753–54 (11th Cir. 2010); *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058 (11th Cir. 2010). *Pretka* reminds district courts that "the first paragraph of § 1446(b) provides a much wider entry into federal court than does the second paragraph of that section ... because the first paragraph of § 1446(b) does not 'restrict the type of evidence that a defendant may use to satisfy the jurisdictional requirements for removal[' ... and] 'the use of deduction, inference, or other extrapolation of the amount in controversy is [not] impermissible[.]'" *Wilson v. Chester Bross Const. Co.*, No. CA 11-0020-KD-C, 2011 WL 1380052, at *12 (S.D. Ala. Apr. 12, 2011) (relying on and quoting *Pretka*, 603 F.3d at 753, 771). Under § 1446(b)(1), Defendants' proffered evidence is properly considered in addition to the allegations state court complaint.

The notice of removal was filed within thirty days of the date defendants were served with a copy of the original complaint; as such, a removal under either section of § 1446(b) is timely. *See Sallee v. Ford Motor Co.*, No. 2:13-cv-806-WKW, 2014 WL 1492874, at *3 (M.D. Ala. Apr. 16, 2014) (explaining when the clock begins to run for the thirty day periods implicated by § 1441(b)). Plaintiffs filed an objection to the removal within thirty days from the filing of the notice of removal; accordingly,

Plaintiffs have timely, within the "thirty day window ... challenge[d] the propriety of the removal itself ... on the basis of a procedural defect [and] a lack of subject matter jurisdiction." *Sallee*, 2014 WL 1492874 (quoting *Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007)).

## A.    Diversity of Citizenship

In the state court complaint, Plaintiffs allege that the parties are not completely diverse and reasserts those allegations in its objection to the notice of removal. Plaintiffs aver that they are citizens of Alabama, Defendant Nelson is a "resident citizen of Montgomery County, Alabama," and that Defendant Primerica is "organized and exist[s] under the laws of the State of Alabama ... with International Headquarters located [in] ... Duluth, Georgia[.]"[6]   Plaintiffs also bring claims against fictitious parties; however, the citizenship of fictitious defendants is disregarded for purposes of diversity jurisdiction.  *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable ... under section 1332(a) ... the citizenship of defendants sued under fictitious names shall be disregarded.").  In the notice of removal, Defendants

---

[6] Plaintiffs, in their objection to removal, also argue (without citation to any supporting authority) that "citizenship is waived" because Defendants "all were and are actively doing business" in Alabama. (Doc. 1 at p. 2).  That argument is directly contrary to the diversity jurisdiction statute, which specifies that diversity is to be determined based on citizenship; the statute does not mention corporate or individual citizenship on the basis of the location of business activities.  *See* 28 U.S.C. § 1332(b) & (c)(1).  Places where a person or corporation conducts business are not relevant to the matter of diversity.

assert that Defendant Nelson is a resident and a citizen of the State of Georgia, and that Primerica is a corporation organized and formed under the laws of Massachusetts with its principal place of business in Georgia.  There is no evidence of record to support or refute either party's allegations of citizenship.

As there is no evidence before the court on the issue, it is the allegations of citizenship of the named parties that the court must consider.  Because there is a dispute on the allegations — with Plaintiffs alleging all named parties are citizens of Alabama and Defendants alleging they are not — and the court must resolve all doubts in favor of remand, Defendants have failed to show that the parties are completely diverse.  *See Univ. of S. Alabama*, 168 F.3d at 411 (all doubts about jurisdiction are to be resolved in favor of remand and there is a presumption in favor of remand); *CSDVRS, LLC v. Purple Communications, Inc.*, 979 F.Supp.2d 1302, 1306 (M.D. Fla. 2013) (remanding because of "doubt" regarding the citizenship of the parties where a removing defendant did not supply proof of complete diversity and the complaint did not show complete diversity on its face).  On the present record, this action should be remanded for lack of complete diversity among the parties.[7]

---

[7] Remand is appropriate on the finding that all parties are not completely diverse without additional analysis of the amount in controversy requirement of § 1332.  However, because the jurisdictional issue is being considered in a Report and Recommendation, it is conceivable that the parties could provide evidence, disputed or agreed upon, that they are completely diverse in their citizenship during the period of time allowed for objections.  Therefore, the Report and

B.     **Amount in Controversy**

1.     **Plaintiffs' Allegations, Damages Demands, and Defendants' Comparitor Cases**

Defendants contend that the court can glean all it needs regarding the amount in controversy from the "face of the complaint."  (Doc. 2; Doc. 8 at p. 1).  This is so, Defendants argue, because the court can make an independent valuation of the allegations of the complaint.  This valuation is accomplished using, according to Defendants, "reasonable deductions, reasonable inferences or other reasonable extrapolations."  According to Defendants, Plaintiffs have made "serious and specific allegations against these Defendants" which enables to court to use "common sense" to correctly determine the true amount in controversy according to Defendants' interpretation of *Roe v. Michelin American, Inc.*, 613 F.3d at 1061-62.  (Doc. 8 at pp. 2-3).

This court recently reviewed other removing defendants' similar reading of *Roe*, and that consideration is applicable in this case.

> Defendants' reading of *Roe* is exuberant. Although *Roe* recognizes that "judicial experience and common sense" may support "reasonable inferences" drawn "from the pleadings" to determine whether "the case stated in [the] complaint meets federal jurisdictional requirements,"

---

Recommendation considers both complete diversity of citizenship and amount in controversy and concludes that remand is appropriate because neither element is met, or because both are not shown by a preponderance of the evidence.

nothing in *Roe* permits the court to indulge in speculation or fill empty gaps in a plaintiff's factual averments with unfounded assumptions about what the evidence may show. 613 F.3d at 1061.

"Judicial experience and common sense" are useless for making "reasonable" deductions, inferences, and extrapolations when the complaint is devoid of any averments from which to deduce, infer, or extrapolate. A reasonable inference "is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." *Arrington v. State Farm Ins. Co.*, No. 2:14–cv–209–CSC, 2014 WL 2961104, at *6 (M.D. Ala. July 1, 2014) (quoting *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007)). "[W]ithout facts or specific allegations, the amount in controversy" can be determined "only through speculation—and that is impermissible." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 753–54 (11th Cir. 2010) (citing *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1209 (11th Cir. 2007)).

Moreover, it is axiomatic that on a motion to remand all questions or doubts as to subject matter jurisdiction are to be resolved in favor of returning the matter to state court, *see Burns*, 31 F.3d at 1095; thus, to the extent that competing inferences may be drawn from the specific factual allegations of the complaint, the court must indulge those inferences most favorable to remand. *See Kokkonen*, 511 U.S. at 377 ("It is to be presumed that a cause lies outside [the court's] limited jurisdiction); *Pretka*, 608 F.3d at 753–54 ("[W]ithout facts or specific allegations, the amount in controversy could be 'divined [only] by looking at the stars'—only through speculation—and that is impermissible.").

*Perkins v. Merion Realty Servs.*, LLC, No. 2:14-CV-1171-WKW, 2015 WL 998198, at *3-4 (M.D. Ala. Mar. 6, 2015).

Defendants' contention that the court should consider the nature of the allegations in the complaint in assessing the potential outcome of the litigation boils

13

down to little more than an invitation for the court to use its "judicial experience and common sense" to divine that the availability of damages for the wrongs Plaintiffs generally allege and to punish Defendants places an amount in excess of $75,000.00 in controversy. It is legally possible that Plaintiffs could recover more than the jurisdictional amount. However, Defendants' burden in sustaining removal jurisdiction is heavier than that; they must show that it is more likely than not that at least $75,000 is truly in controversy. Defendants have not met that burden.

Despite being eleven pages long, Plaintiffs' state court complaint says almost nothing of substance pertinent to the amount of damages being sought. That is important to the analysis of whether the pleading itself demonstrates federal jurisdiction. This case is the classic "fact free" case dealt with in *Lowery*.[8] Here, while the court's experience and common sense certainly informs it that an unauthorized debit of money from a bank account that led to the repossession of an automobile and damage to credit history has some value, for it to say, based only on the allegations of the complaint, that the value of each, or all combined, exceeds $75,000 would "amount to unabashed guesswork, and such speculation is frowned upon." *Lowery*, 483 F.3d at 1210–11.

---

[8] The court is aware that *Lowery* has been limited by *Pretka* to a binding decision with respect to § 1446(b)(3), but the discussion in *Lowery* about "fact free" cases is instructive in this instance as the pleading at issue is spare on factual assertions that speak to the likely amount in controversy.

14

Plaintiffs assert claims sounding in negligence, intentional torts, and fraud. While the allegations of the complaint are scant, Plaintiffs' allegations of fraud are especially threadbare in that they merely inform that Plaintiffs accuse Defendants of fraud, but even a hint at the specifics of what fraudulent acts Defendants have supposedly committed is wholly absent.   The additional allegations of illness, suffering, and hardship also do not help the court in the absence of more specifics. "Simply contending that Defendants' acts or omissions caused various types of harm does nothing to inform on the value of the claim." *Perkins*, 2015 WL 998198, at *4. In *Benton v. State Farm & Cas. Co.*, 2014 WL 2002851 (M.D. Ala. 2014), the court concluded that allegations of generalized harm contained in a complaint says nothing about the value of the claims no matter the seriousness of the general assertion.  The holdings and reasoning in *Perkins* and *Benton* are applicable here as well — where a complaint is made up of a general assertion of wrongdoing and nothing more specific, such a pleading does not "'on its face' support removing the action from state court." *Perkins*, *supra*.  There is simply no guide in the complaint beyond engaging in pure speculation about the amount of compensatory damages possibly (and certainly not likely) at issue except possibly for the value of Plaintiffs' repossessed car, which has been factored into this analysis and falls well short of $75,000.00.

Defendants argue that Plaintiffs' demand for punitive damages, whether standing

15

alone or aggregated with the prayer for compensatory damages, shows that the amount in controversy is more likely than not satisfied.  However, the court cannot say that the claims for punitive damages, without a clear picture of the dollar value of compensatory damages, or more facts describing Defendants' alleged conduct, will make this case worth more than $75,000.  It is certainly appropriate for the court to consider the value of punitive damages in light of the state-law standards governing their award and review.  *See Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240–43 (1943); *Roe*, 613 F.3d at 1065–66; *Broughton v. Fla. Int'l Underwriters, Inc.,* 139 F.3d 861, 863–64 (11th Cir. 1998); *Ryan v. State Farm Mut. Auto. Ins. Co.*, 934 F.2d 276, 277 (11th Cir. 1991); *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987).

Defendants are correct that punitive damages are available under Alabama law for a successful plaintiff who asserts claims of wantonness, outrage, conversion, and fraud, all of which are brought in this case.  *See Shiv-Ram, Inc. v. McCaleb*, 892 So.2d 299 (Ala. 2003) (wantonness); *Green Tree Acceptance, Inc. v. Standridge*, 565 So.2d 38 (Ala. 1990) (outrage); *Roberson v. Ammons*, 477 So.2d 957 (Ala. 1985) (conversion); *Mobile Dodge, Inc. v. Alford*, 487 So. 2d 866 (Ala. 1986) (fraud).  The mere availability of punitive damages for a claim is not dispositive.  Given that the presumption is against federal jurisdiction, a removing defendant must show some link

16

between the facts of the removed case and those in which punitive damages were awarded.  Otherwise, the court ventures into speculation and guesswork.

Defendants attempt to make that link by directing the court to non-binding decisions made within this district and in other Alabama federal courts and urge this court to find subject matter jurisdiction in this dispute based on the facts and holdings of those other decisions.  *See Bolling v. Union Nat'l Life Ins. Co.*, 900 F.Supp. 400, 405 (M.D. Ala. 1995); *Davis v. Franklin Life Ins. Co.*, 71 F. Supp. 2d 1197, 1200 (M.D. Ala. 1999); *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1222 (S.D. Ala. 1998); *Jackson v. Am. Bankers Ins. Co. of Fla.*, 976 F. Supp. 1450, 1452 (Ala. 1997).  Those cases are not factually analogous to the case at bar, and therefore they do not serve to persuade that the prayer for damages in this case more likely than not meet the jurisdictional minimum.

As evidence in support of the amount in controversy, Defendants also provide the court with jury awards in two cases, decided in 1994 and 1997, that are factually distinguishable from this case and were decided so long ago as to belie the reliability of those cases as comparitors.  The landscape of punitive damages in Alabama has changed a great deal since the mid-1990's, with *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), and its progeny setting in motion an ever-changing body of law on the amount of punitive damages allowable and awarded in Alabama.  Assuming

17

without deciding that other damages awards are conceptually relevant to the prayer for damages in this case, the temporal proximity of the cases offered by Defendants notwithstanding, while Defendants argue that it has offered "analogous" cases, both in the form of jury verdicts and citations to Alabama appellate court opinions affirming awards of punitive damages, the cases Defendants rely upon do not align with the facts pled here, such as they are.

Largely because of the limited allegations of the state court complaint, "there is no basis from which an economic assessment may properly be said to begin." *Perkins*, 2015 WL 998198, at *5.  Here, as in *Perkins*,

> Plaintiffs alleged that Defendants' conduct caused them distress and for that they should receive compensation and that Defendants should be punished, nothing more. Neither the "value" of the claim nor the amount of the punishment can be determined in any principled manner. The court is not authorized to engage in speculation in the absence of a factual starting point, which is clearly absent here.

*Id.*  The complaint does not "on its face" support removing the action from the state court.

### 2.   Plaintiffs' settlement demand

Defendants premise removal partly on the affidavit of Adam Weaver, who is the Assistant General Counsel for Primerica Life Insurance Company.  (Doc. 2-3).  In his affidavit, Mr. Weaver testifies that, during a "conversation," Plaintiffs' counsel "stated

that, as a result of Primerica and Mr. Nelson's alleged wrongdoing, the Simpsons' credit and credit score [sic] were damaged and their car was repossessed, thereby requiring the Simpsons to purchase a new vehicle.   Based on those damages, [Plaintiffs' counsel] made a settlement demand in the amount of $250,000." (Doc. 2-3 at pp. 2-3).   Defendants contend that the oral settlement demand is evidence that the amount in controversy requirement of § 1332 is satisfied.   In their objection to removal, Plaintiffs identify the absence in the state court complaint of any amount of damages sought against Defendants, but they are silent on the matter of the settlement demand issue raised in the notice of removal.

To the extent Defendants rely on the settlement demand as "highly relevant" evidence in support of the amount in controversy, that reliance is misplaced.   To support their designation of settlement demands as being "highly relevant," Defendants rely upon *McCullough v. Plum Creek Timberlands, L.P.*, No. 3:09-cv-1038-MHT, 2010 WL 55862 (M.D. Ala. Jan. 4, 2010).   In *McCullough*, U.S. District Judge Myron Thompson determined that a settlement demand in the form of a letter from plaintiff's counsel requesting $150,000.00 and "additional non-cash consideration" to settle a dispute filed in state court, where the complaint was silent as to damages, satisfied the court's concerns that, even allowing a "gap" for puffery, "the requisite jurisdictional amount is readily deducible from the face of the removal documents before the court."

2010 WL 55862, at **5-6 (quoting *Lowery*) (marks omitted).  Judge Thompson found particularly compelling that plaintiff's counsel did not "explain" why the letter was mere posturing without a basis in the true value of the case, plaintiff's counsel viewed the offer as a "discount," and Judge Thompson ultimately agreed with the defendant that the "non-cash" demand showed "a careful analysis of the case by the [p]laintiff" such that the value of the case could be found to exceed the floor value of § 1332.  *Id.* at *5.

Without determining whether the conclusion in *McCullough* is one with which this court agrees or disagrees, the facts of that case are distinguishable from the present case such that any holding in *McCullough* is not persuasive or applicable here. First and foremost, the settlement demand in *McCullough* was presented by plaintiff's counsel in a letter to defendant such that the court could review plaintiff's own words and measure their meaning and credibility.  That type of review is impossible in this case as the settlement demand was oral, and there is no transcription.  *See Smith v. Baily's Holiday*, 843 F.Supp. 1451, 1455-56 (N.D. Ga. 1994)(explaining the sound policy for not considering oral settlement demands when determining the amount in controversy question);[9] *c.f. State Farm Fire & Cas. Co. v. Valspar Corp.*, 824 F.

---

[9] In *Smith*, the court concluded that removal based on oral settlement discussions, even those discussions that were recounted to the court in an affidavit form participating counsel,  was premature and did not satisfy the procedural requirements of a second paragraph removal.  *Id.* at 1454-56.

Supp. 2d 923, 934-37 (D. S.D. 2010) (providing a thorough discussion on the majority rule that an oral settlement communication does not suffice as "other paper" to trigger the procedure for removal under § 1446(b)(3)).  Defendants to argument that "[a] settlement demand is highly relevant in determining the amount in controversy for purposes of removal," is not based in a correct or complete statement of the law. (Doc. 8 at p. 7).

> A settlement demand letter will not alone establish that the amount in controversy exceeds $75,000, but "it counts for something ." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir.1994). Because "[s]ettlement offers commonly reflect puffing and posturing," they generally are "entitled to little weight in measuring the preponderance of the evidence." *Jackson v. Select Portfolio Servicing, Inc.*, 651 F.Supp.2d 1279, 1281 (S.D. Ala. 2009) (citing *Hall v. CSX Transp., Inc.*, No. 3:06–CV–37–WKW, 2006 WL 3313682, at *3 n. 5 (M.D. Ala. Nov.14, 2006)). A settlement offer will only be entitled to additional weight when it provides enough specific information to support the plaintiff's claim for damages to indicate that the offer is a reasonable assessment of the value of the plaintiff's claim. *See Standridge v. Wal–Mart Stores, Inc.*, 945 F.Supp. 252, 256–57 (N.D. Ga. 1996) (citing *Golden Apple Mgmt. Co. v. Geac Computers, Inc.*, 990 F.Supp. 1368 (M.D. Ala. 1998)).

*Perkins*, 2015 WL 998198, at *2.  A written settlement demand is usually afforded "little weight" in the absence of specific information on the basis of the demand.  Here, the oral settlement demand provides no reliable specificity whatsoever.[10]  Accordingly,

---

[10] Mr. Weaver testified that the settlement demand was made based on the "alleged wrongdoing" of both named Defendants, the damage to the Simpsons' credit, the repossession of Plaintiffs' automobile, and that they purchased a new vehicle because their former car was repossessed. (Doc. 2-3).  Those statements do not provide information regarding the Plaintiffs' valuation of their case

the settlement demand is afforded no weight when determining whether the amount in controversy is met.

For those reasons, Defendants have not demonstrated that removal was appropriate or that the amount in controversy likely exceeds the jurisdictional minimum.

## III.   CONCLUSION AND RECOMMENDATION

For these reasons, the Magistrate Judge **RECOMMENDS** that Plaintiffs' motion to remand (Doc. 1) is due to be **GRANTED** and this cause be remanded to the Circuit Court of Montgomery County, Alabama, for lack of subject matter jurisdiction. The notice of removal is procedurally premature and Defendants have not met their burden to show complete diversity of citizenship or the minimum amount in controversy.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **December 17, 2015.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final

---

or an objective picture of the likely amount in controversy and only reflect, at best, Mr. Weaver's understanding of and impressions from a conversation with Plaintiffs' counsel.

order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 3rd day of December, 2015.

/s/ Paul W. Greene
United States Magistrate Judge